UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BENJAMIN PENICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:25-CV-48-PPS-JEM |
| ) | |
| BP PRODUCTS OF NORTH AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Benjamin Penick sues his former employer BP Products of North America, Inc. ("BP") alleging discrimination and retaliation on account of his race and disabilities in violation of Title VII and the ADA, respectively. He also brings claims under Section 1981 and the Family and Medical Leave Act, but those allegations are not presently before the court. BP moves to dismiss Penick's Title VII and ADA claims as time barred. I agree with respect to Penick's ADA claims and all but one of the allegations supporting his Title VII claims. BP's motion to dismiss is therefore granted in part and denied in part.

**Background**

BP hired Benjamin Penick on October 2, 2006, originally as an Instrument and Electrician Technician. [DE 11 at ¶13.] Penick eventually became an HVAC Technician with BP. [*Id.*] He was the only black HVAC Technician. [*Id.*] In January 2023, Penick injured his neck, shoulder, pelvis, ribs, and scapula in a car accident. [*Id.* at ¶14.] BP approved him for short-term disability leave that began on January 28, 2023. [*Id.*]

1

Penick was set to return to work in August 2023. [*Id.*] Penick says he suffers from disabilities that stem from this car accident as well as from diabetes, plantar fasciitis, and gout. [*Id.* at ¶15.]

In May 2023, while on leave, Penick says an HVAC Supervisor position opened that could accommodate his medical restrictions of no bending, twisting, or lifting more than 40 lbs. [*Id.* at ¶16, 14.] Penick had relevant experience for this role because he had substituted for his supervisor on prior occasions. [*Id.* at ¶16.] Penick applied for the HVAC Supervisor role in July 2023, but an HR representative (who is white) denied his application because he had "active discipline" on his record from 2022. [*Id.*]

Penick approached BP's Medical Department on July 13, 2023, to update his medical restrictions to include no overhead lifting of 40 lbs. or more. [*Id.* at ¶17.] Penick says BP told him they could not accommodate his request, HR sent him a "screenshot of a termination notice", BP disabled his access badge, and security escorted him from the premises. [*Id.*] But it doesn't appear BP fired Penick because he had his updated medical restrictions faxed to BP the next day and declined BP's third-party administrator's (an entity known as "Sedgwick") offer for him to extend his leave. [*Id.* at ¶18.] Instead, Penick asked Sedgwick to process his request to return to work. [*Id.*] On July 17, 2023, Penick forwarded his accommodation request to BP's HR, which instructed him to cease all attempts to return to work while Sedgwick reviewed his disability case. [*Id.* at ¶19.]

On August 1, 2023, Sedgwick "verified" Penick's disability case. [*Id.* at ¶20.] Penick says BP told him they would accommodate his request after a positive

functional capacity evaluation, which he later passed and returned to work on August 14, 2023. [*Id.*] Upon his return to work, Penick says he requested BP's affirmative action policy and complained to HR about BP's lack of the same. [*Id.* at ¶21.] Thereafter, BP denied Penick additional transfer requests and promotions. [*Id.*]

At this point, the relationship between Penick and his employer appears to have spiraled downward. Penick arrived to work two minutes late on December 11, 2023. [*Id.* at ¶24.] A white supervisor confronted Penick, but Penick explained union policy permitted him a six-minute grace period. [*Id.*] Penick then returned to work and says he used a pocketknife to open a box. [*Id.*] BP suspended Penick the next day for "attacking a supervisor with a knife." [*Id.* at ¶25.] Penick says his union later advised him the attack allegation was found to be unsubstantiated. [*Id.* at ¶27.] While he was suspended, HR informed Penick he had wrongly received a bonus in 2022. [*Id.* at ¶25.] BP then terminated Penick on February 2, 2024, for "failing to protect company assets." [*Id.*]

Penick's approach to exhausting his administrative remedies has been an odd one. As will be discussed in detail below, Penick first filed a Complaint of Employment Discrimination with the Office of Federal Contract Compliance Programs ("OFCCP") on February 4, 2024 (the "First Charge").[1] [DE 15-1.] He received an email on June 25, 2024, from OFCCP notifying him of his Notice of Right to Sue. [DE 15-2.] Penick next filed a Charge of Discrimination alleging racial discrimination and retaliation with the

---

[1] The OFCCP is a Department of Labor agency that ensures companies doing business with the federal government comply with certain equal employment opportunity laws. Because of a memorandum of understanding between the OFCCP and the EEOC and federal regulations, Penick does not dispute BP's argument that Penick's first charge of discrimination filed with the OFCCP is the functional equivalent of filing with the EEOC, and I will treat it as such.

EEOC on August 27, 2024, (the "Second Charge") and received his Right to Sue Notice on October 31, 2024. [DE 11 at ¶9.] Finally, Penick filed a Charge of Discrimination alleging disability discrimination and retaliation with the EEOC on November 27, 2024, (the "Third Charge") and received his Right to Sue Notice on February 3, 2025. [*Id.* at ¶10.] Penick brought suit in this Court on January 29, 2025, [DE 1] and filed the operative Amended Complaint on April 21, 2025 [DE 11].

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Of note, the Seventh Circuit has held, in the same context as here, that arguments about "an affirmative defense like untimeliness" do not challenge the legal *sufficiency* of a claim as a Rule 12(b)(6) motion seeks to do. *Jackson v. AbbVie Inc.*, No. 24-2311, 2025 WL 487213, at *1 (7th Cir. Feb. 13, 2025). Instead, BP's argument "contests the adequacy

4

of [Penick's] pleadings, which is the subject of Rule 12(c)." *Id.* As in *Jackson*, the Court will construe BP's motion as a Rule 12(c) motion for judgment on the pleadings. This distinction is ultimately immaterial because "[a] motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Schimandle v. Dekalb Cnty. Sheriff's Office*, 114 F.4th 648, 654 (7th Cir. 2024).

Plaintiffs must bring suit concerning their Title VII and ADA claims within 90 days of their receipt of a right to sue notice from the relevant government agency. 42 U.S.C. § 2000e-5(f)(1) (concerning Title VII claims); 42 U.S.C. § 12117(a) (concerning ADA claims). The application of this deadline becomes complicated when plaintiffs file more than one charge of discrimination, as in this case. While noting that it has not yet addressed such a situation, the Seventh Circuit looked favorably upon other Circuits' holdings that "the receipt of a second right-to-sue notice based on a *substantively identical* charge that yielded an earlier notice does not extend or restart the statutory 90-day filing deadline." *Jackson*, 2025 WL 487213 at *2 (emphasis added); *King v. Ford Motor Co.*, 872 F.3d 833, 839 (7th Cir. 2017) ("[I]f the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process.") (citation omitted).

Thus, "where a second-filed charge is a *mere re-allegation* of the first EEOC charge, *i.e.*, . . . *reasonably related or similar enough to be within the scope of the first charge*, the 90-day deadline established based on the first charge remains applicable." *Taylor v. Nw. Mem'l Hosp.*, 521 F.Supp.3d 714, 717 (N.D. Ill. 2021) (emphasis added) (citation omitted). The converse of this principle is also true: plaintiffs may use the later

5

received 90-day window to bring suit based subsequent charges of discrimination that allege "separate and distinct events." *Giovanni v. Megabus USA, LLC*, No. 14 C 3195, 2015 WL 6449133, at *3 (N.D. Ill. Oct. 23, 2015). To determine whether a second charge of discrimination is similar to the first one, "[c]ourts look at the discriminatory acts alleged, not the theory of discrimination, to determine whether a plaintiff is bringing a second, similar charge." *Id.*

Before getting into the guts of the argument, I note that BP and Penick cite the administrative record attached to BP's memorandum in support of its motion to dismiss. [*See* DE 15-1–DE 15-6.] Penick attached one of his three EEOC filings to his Amended Complaint, [DE 11-1], but I will take judicial notice of all of them for purposes of this opinion. *See Norman v. Mauser Packing/Bway*, No. 2:22-CV-242-TLS-JEM, 2023 WL 3597711, at *4 (N.D. Ind. May 23, 2023).

In the First Charge of Discrimination filed with the OFCCP, Penick alleged discrimination based on his race and disability; he also checked the box for retaliation. [DE 15-1 at 3–4.] Penick alleged BP at first "refused [his] accommodation" to return to work after the January 2023 accident but then agreed to accommodate him "pending the outcome" of a functional capacity evaluation. [*Id.* at 6.] Penick said BP notified him on August 15, 2023, the date listed on his First Charge as the date of discrimination and retaliation, that BP decided not to interview him for the new HVAC Supervisor position because of "active discipline" on his file. [*Id.* at 3, 6.] He alleged racial discrimination by a former supervisor tainted the hiring process for that position. [*Id.* at 6.] Penick referenced a December 12, 2023, disagreement with the new HVAC

6

Supervisor concerning the start time for work and the related allegation that Penick threatened this supervisor with a knife. [*Id.* at 6–7.]

Penick alleged BP terminated him on February 2, 2024, in "retaliation for my questioning the legitimacy of the reason given to me on August 15th for denying an advancement opportunity by not interviewing me for the HVAC supervisor role." [*Id.* at 8.] He also said he "asked to see BP Whiting's VeVraa and section 503 combined FAAP." [*Id.*] I'm not exactly sure what that means. Though not specified by Penick, I suspect these are references to the affirmative action requirements for government contractors under the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA") and Section 503 of the Rehabilitation Act of 1973. *See* 41 CFR Part 60-300; 41 CFR Part 60-741. He also seems to use the acronym for a Functional Affirmative Action Plan ("FAAP") which are used by federal contractors. Penick alleged his comments to a gatekeeper at work concerning the lack of a BP "Affirmative Action plan . . . . may have had an impact on my current situation." [DE 15-1 at 8.] As noted above, Penick received his Right to Sue notice on June 25, 2024, [DE 15-2 at 2–3], and his 90-day deadline to bring suit expired on September 23, 2024.

Penick's Second Charge of Discrimination filed with the EEOC on August 27, 2024, alleged race discrimination and retaliation, but it made no mention of disability discrimination. [DE 15-4 at 2.] He alleged, in relevant part:

> My position title was HVAC Technician [a]fter returning to work in August of 2023. I asked to see the Affirmative Action Policy. After that meeting there was discussion about a [b]onus I received in 2022. The discussion was I was not due a bonus. When I made a statement that BP does not have an affirmative action policy they just have an EEO statement disguised as the Affirmative Action Policy I was told I was

7

being disrespectful. After that Meeting I was denied transfers to other positions that I was qualified for in retaliation to me asking questions. On February 2, 2024, I was discharged, the reason given by Management was fraudulently obtaining a payment I was not entitled to in 2022."

[*Id.*] Penick received his Right to Sue Notice on October 31, 2024, [DE 15-5 at 2–5], and his 90-day deadline to sue expired on January 29, 2025 (the same day he filed his initial complaint in this case [DE 1]).

Somewhat confusingly, there appears to be some dispute as to the final form of Penick's Third Charge. One version, filed on November 27, 2024, is attached to Penick's Amended Complaint and alleges disability discrimination and retaliation. [DE 11-1 at 2.] This version alleged the following:

> I was fired under pretext after I complained about not being accommodated for my documented disabilities. After initially refusing to accommodate restrictions from my treating physician initially (I suffered major injuries from a car accident in January of 2023), I complained internally and was eventually accommodated and allowed to return to work in August of 2023, only to be suspended in December 2023 (on false testimony from my line manager) and eventually terminated on the above adverse action date in February [2024] on false allegations.

[*Id.*] Penick received his Right to Sue Notice on February 3, 2025, [DE 10-8 at 2–6], so his 90-day deadline to sue expired on May 4, 2025 (Penick filed his Amended Complaint on April 21, 2025 [DE 11]).

BP, however, attached a different version of Penick's Third Charge to its prior motion to dismiss. In this version, apparently filed on February 3, 2025, Penick alleged, in relevant part, the following:

> Approximately December 12, 2023, I was suspended pending investigation into allegations that I had assaulted a supervisor and threatened them with a knife. Approximately February 2, 2024, I was suspended for, 'receiving an ACB for the 2021 plan year for which you

8

>were not entitled.' I was then terminated for, 'misrepresentation in an attempt to fraudulently obtain an ACB payment for the 2022 plan year to which you were not entitled.' Approximately October 28, 2024, I was notified by the union that the company could not substantiate that I had threatened, or attacked, a supervisor with a knife on December 12, 2023, therefore there was no reason I should have been suspended. I believe that I was being discriminated against when I was harassed, subjected to different terms and conditions, suspended and terminated because of my medical condition, in violation of the Americans with Disabilities Act, as amended. I also believe that I was subjected to the above discrimination because I asked about my bonus for the 2022 plan year.

[DE 10-7 at 2–3.] It's not clear to me when (or if) Penick received a Right to Sue Notice in response to this February 3, 2025, version of his Third Charge. In any event, it is immaterial because any Right to Sue Notice would have been issued within 90 days of Penick filing his Amended Complaint on April 21, 2025.

Cutting through this clutter as best I can, the present dispute hinges on the substance of Penick's First Charge filed with the OFCCP on February 4, 2024. Penick says his subsequent charges of discrimination filed with the EEOC alleged separate and distinct allegations of discrimination and retaliation as compared to his initial OFCCP complaint. Accordingly, Penick claims he did not fail to bring his Title VII and ADA claims by the 90-day deadline (September 23, 2024) set by his June 2024 Notice of Right to Sue from OFCCP. By contrast, BP contends Penick's Second and Third Charges are substantively identical to his First Charge. As a result, Penick's Title VII and ADA claims are bound by the 90-day deadline to sue set by the June 2024 Notice of Right to Sue and are untimely.

I begin with Penick's Title VII claims of racial discrimination and retaliation, which he jointly alleges with his Section 1981 claims in Counts III and IV of his

9

Amended Complaint. In Count III, Penick alleges race discrimination based on denial of a promotion "and other opportunities to advance", suspension, and termination. [DE 11 at ¶38.] In Count IV, his retaliation claim, Penick alleges his opposition to racial discrimination and his request for BP's affirmative action policy resulted in the denial of "transfers and promotions" and in his termination. [*Id.* at ¶¶43–44.]

Penick's allegations of suspension, termination, and non-selection for the HVAC Supervisor position based on his race are time barred. In fact, Penick all but concedes this point. Though Penick says his Title VII claim "does not include his suspension and/or termination" or "his non-selection for the HVAC Supervisor role" [DE 18 at 9], as detailed above, Counts III and IV plainly allege suspension, termination, and his non-selection for the HVAC Supervisor role. A fair reading of the Amended Complaint suggests Penick's allegation he was "denied a promotion" is a reference to the HVAC Supervisor role. [DE 11 at ¶38.] These allegations of discrimination based on Penick's race are time barred for the simple reason that they are included in his First Charge and are either re-alleged in or dropped from his Second Charge. Penick's Second Charge reiterated the allegation of his February 2024 "discharge" based on race and dropped mention of his suspension or non-selection for the HVAC Supervisor role. Accordingly, Penick's allegations under Title VII of racial discrimination and retaliation related to the adverse actions of his termination, suspension, and non-selection for the HVAC Supervisor position are bound to the 90-day deadline to sue that followed his First Charge (September 23, 2024) and are time barred.

Instead, Penick seeks to pursue a Title VII claim in this lawsuit based on his

allegation that BP denied his requests to transfer or be promoted to PLC Specialist, Operator, and I&E Supervisor. [DE 11 at ¶21.] Penick says his First Charge identified the protected activity as his "questioning the legitimacy" of BP's reason for denying him an interview for the HVAC Supervisor position. As discussed above, any claim related to the alleged adverse actions of termination, suspension, and non-selection for the HVAC Supervisor role that stemmed from this alleged protected activity are time barred. In Penick's view, his Second Charge alleged a separate and distinct adverse action (the denial of his requests to transfer to positions *other* than the HVAC Supervisor role) that stemmed from a separate and distinct protected activity (his request for a copy of BP's affirmative action policy).

A wrinkle here is that the adverse actions alleged in Penick's First Charge (suspension and termination) and his Second Charge (denial of transfers) appear to stem in part from the same activity: his request for a copy of BP's affirmative action policy. In his First Charge, Penick said his comment on BP's lack of affirmative action policy, which he said occurred during a Microsoft Teams meeting, "may have had an impact on my current situation." [DE 15-1 at 8.] In his Second Charge, Penick alluded to the denial of his transfer requests occurring directly after a meeting in which he "made a statement that BP does not have an affirmative action policy." [DE 15-4 at 2.] The precipitating activity for both these claims appears substantively identical.

So, must the allegations of protected activity or the allegations of the adverse action be "separate and distinct"? District court cases applying the 90-day filing deadline focus on whether "the *discriminatory acts* alleged" in subsequent charges differ

11

from those alleged in the first charge. *See Giovanni*, 2015 WL 6449133 at *3 (emphasis added); *Vitello v. Liturgy Training Publ'ns*, 932 F.Supp. 1093, 1099 (N.D. Ill. 1996) (concluding plaintiff "was permitted to bring his second EEOC charge alleging *a different form of discrimination*") (emphasis added). I find that Penick's allegations in his Second Charge and Amended Complaint of denial of transfers to positions other than the HVAC Supervisor role are sufficiently "separate and distinct" acts of discrimination (i.e. adverse actions) from those alleged in his First Charge so are not time barred by the right to sue notice tied to that Charge. This is true even though these distinct acts of discrimination appear to stem from the same protected activity (Penick's request to see BP's affirmative action policy).

As the final straw, BP argues in reply that Penick's allegations of denial of transfers to other positions in his Second Charge are too vague. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In BP's cited case, *McGoffney v. Vigo Cnty. Div. of Family & Children, Family & Soc. Servs. Admin.*, the plaintiff alleged defendant discriminated against her by denying her multiple applications for employment. 389 F.3d 750 (7th Cir. 2004). Her EEOC charge referred to her applications to multiple "positions" and "jobs" but listed as the date of discrimination the date the defendant rejected only one of her applications. *Id.* at 751–52. The charge referred to a specific year (2000) and made no reference to actions occurring during the year she filed certain prior applications (1999). *Id.* at 752.

*McGoffney* occurred at the summary judgment stage and involved a situation in

12

which the plaintiff attempted to include discriminatory acts in her complaint that occurred outside the specific year identified in her EEOC charge. That's a different situation than here where Penick's Second Charge alleged BP denied his transfer to other positions after BP in August 2023 denied his application for the HVAC Supervisor role. In any event, this argument first raised in reply is not properly before the Court for adjudication. *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived."). The Court finds Penick's Title VII allegation of denial of transfers to "other positions" is sufficient to survive dismissal.

I now turn to Penick's ADA claims, which are asserted in Counts I and II of his Amended Complaint. In Count I, Penick alleges BP subject him to "disparate treatment because of his disability", specifically by suspending and terminating him. [DE 11 at ¶29.] In Count II, Penick alleges he "requested an accommodation under the ADA" and BP retaliated by "denying him transfers and promotions and terminating his employment." [*Id.* at ¶¶33–34.] As with his race discrimination and retaliation claims, Penick's Amended Complaint alleges several discriminatory actions by BP: (1) failure to accommodate, (2) suspension, (3) termination, and (4) denial of transfers and promotions.

Penick argues his First Charge alleged a failure to accommodate claim, which is a separate and distinct theory than the allegations of discrimination and retaliation in his Third Charge. This argument clouds the relevant inquiry here: what discriminatory *actions* did Penick allege in his First Charge? After all, "[c]ourts look at the

13

discriminatory acts alleged, not the theory of discrimination, to determine whether a plaintiff is bringing a second, similar charge." *Giovanni*, 2015 WL 6449133 at *3. In his First Charge, Penick alleged BP initially "refused to accommodate" both his initial list of physical restrictions and an updated list of one restriction. [DE 15-1 at 6.] Penick said BP eventually accommodated his one remaining restriction "pending the outcome of an FCE." [*Id.*] Because Penick's First Charge included allegations of failure to accommodate his physical restrictions, any attempt by Penick to allege an ADA discrimination or retaliation claim based on that alleged failure to accommodate is time barred.

  This leaves Penick's Count I and Count II allegations concerning his termination, suspension, and BP's denial of his transfer requests. Penick's Third Charge re-alleged the same suspension and termination alleged in his First Charge. Penick's First Charge alleged disability discrimination and noted his December 2023 suspension and February 2, 2024, termination. [*Id.*] This is the same suspension and termination alleged in his Third Charge [DE 11-1 at 2; DE 10-7] and his Amended Complaint [DE 11 at ¶¶25, 29, 34]. Penick's First Charge is not as explicit in linking his suspension and termination to his disability as it does to his race. But his First Charge selected the box for disability discrimination and retaliation and mentioned these same adverse actions. I find that the allegations of suspension and termination first articulated in his First Charge are reasonably related such that they fall within the scope of his First Charge and are therefore time barred.

  Finally, Penick's Third Charge (either version) does not allege any denial of

transfers or promotions as he now alleges form part of the basis for his ADA retaliation claim in Count II. [*See* DE 11 at ¶34.] As noted above, Penick cannot bring claims under the ADA that were not originally included in his EEOC charges. Thus, Penick's allegation of ADA retaliation predicated on BP's alleged denial of his transfer requests and promotions has not been administratively exhausted and must be dismissed. *See, e.g.*, *Wilson v. Regal Beloit Am., Inc.*, 521 F. Supp. 3d 760, 770-71 (S.D. Ind. 2021). Counts I and II of Penick's Amended Complaint are dismissed in their entirety.

## Conclusion

For the aforementioned reasons, BP Products of North America, Inc.'s Motion to Dismiss [DE 14] is **GRANTED IN PART and DENIED IN PART**. Counts I and II of Benjamin Penick's Amended Complaint [DE 11] are **DISMISSED WITH PREJUDICE**. The Title VII component of Counts III and IV alleging suspension, termination, and non-selection for the HVAC Supervisor role are also **DISMISSED WITH PREJUDICE**. The Title VII component of Counts III and IV alleging denial of transfers to other positions **REMAIN PENDING**.

**SO ORDERED.**

ENTERED: October 24, 2025.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT